AO 106 (Rev. 5/85) Affidavit for Search Warrant

# United States District Court

Southern **DISTRICT OF** California

FILED
08 FEB 20 AM 10:31
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: CP

| In the Matter of the Search of (Name, address or brief description of person or property to<br>Priority Mail with Delivery Confirmation # 0307-1790-0004-4662-5204, addressed to Mark Thompson, 566 A Bristol St., Brooklyn, NY 11212. The parcel listed the return information of Joe Cortez, 317 Garrett St, Suite 203, Chula Vista, CA 91910 | **APPLICATION AND AFFIDAVIT**<br><br>**FOR SEARCH WARRANT**<br><br>CASE NUMBER: '08 MJ 0494 |
|---|---|

I, Ana L. Flores being duly sworn depose and say:

I am a(n) U. S. Postal Inspector
        Official Title
and have reason to believe

that on the premises known as (name, description and/or location)
Priority Mail with Delivery Confirmation # 0307-1790-0004-4662-5204, addressed to Mark Thompson, 566 A Bristol St., Brooklyn, NY 11212. The parcel listed the return information of Joe Cortez, 317 Garrett St, Suite 203, Chula Vista, CA 91910 which is in the custody of the U. S. Postal Inspection Service

in the Southern District of California

there is now concealed property, namely (describe the person or property)
Controlled substances, materials, and documents reflecting the distribution of controlled substances through the United States Mail, including money paid for controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1), 843(b) and 846

which is (give alleged grounds for search and seizure under Rule 41(b) of the Federal Rules of Criminal Procedure)
evidence and contraband

in violation of Title 21   United States Code, Section(s) 841(a)(1), 843(b) and 846.
The facts to support the issuance of a Search Warrant are as follows:
See attached.

Continued on the attached sheet and made a part hereof.    X Yes    ___ No

_Ana Flores_
Signature of Affiant

Sworn to before me, and subscribed in my presence

2/19/08                                          at   San Diego, CA
Date                                                  City and State
**WILLIAM McCURINE, JR.**

_W McCurine_

U.S. Magistrate Judge
Name and Title of Judicial Officer                    Signature of Judicial Officer

## AFFIDAVIT FOR SEARCH WARRANT

I, Ana Flores, being duly sworn hereby depose and state:

1. I am a United States Postal Inspector currently assigned to the San Diego Field Office of the Postal Inspection Service and my duties include investigating violations of the Drug Abuse Prevention and Control Act.

2. This affidavit is submitted in support of an application for a search warrant for the following Priority Mail with Delivery Confirmation # 0307-1790-0004-4662-5204, addressed to Mark Thompson, 566 A Bristol St., Brooklyn, NY 11212. The parcel listed the return information of Joe Cortez, 317 Garrett St, Suite 203, Chula Vista, CA 91910.

3. I have been employed as a Postal Inspector since July 2003. From October 2003 through September 2005, I was assigned to the Internal Crimes / Mail Theft Investigations Team. Previous to that, I was employed with the United States Postal Service (USPS) for more than eight years. In July 2006, I received specialized training from the U.S. Postal Inspection Service which included instruction regarding individuals using the U.S. Mails to transport controlled substances and proceeds from the sale of controlled substances as well as the use of Postal Money Orders and other negotiable instruments to launder the proceeds of controlled substances transactions. In May 2007, I completed 80 hours narcotics investigations training by attending the Drug Enforcement Administration's Basic Narcotic Investigator School. In November 2007, I completed 30 hours training from the California Narcotics Officers Association, relative to the investigation of narcotics trafficking.

4. I have been involved in more than 100 investigations involving the shipment of illegal narcotics and controlled pharmaceuticals as well as drug proceeds through the US Mails. I have also investigated individuals who have used US Postal Money Orders, commercial money orders and other types of negotiable instruments to launder the proceeds of illegal narcotics and controlled pharmaceuticals. These investigations have resulted in the arrests of individuals involved in the

illegal mailing of narcotics, the seizure of illegal narcotics, controlled pharmaceuticals and proceeds of illegal narcotics and controlled pharmaceuticals.

5. Based upon my training, experience and discussions with other Postal Inspectors and agents I know the following in summary:

   a. Individuals who regularly handle controlled substances leave the scent of controlled substances on the currency and other items they handle. Proceeds from these sales are often stored in close proximity to the controlled substances, thereby transferring the odor of the controlled substance to the monies and packaging materials. Narcotic canines are trained to alert on the scents of controlled substances.

   b. The Postal Inspection Service and DEA Narcotic Task Force Commercial Interdiction Team have worked aggressively to limit the use of shipping companies and the U.S. Mail for the transportation of controlled substance through these companies.

   c. Ongoing investigations have disclosed that Priority/overnight and "two day" parcel deliveries have become a method of choice by drug dealers for the transportation of contraband or the proceeds of narcotic sales.

   d. I know that Southern California is a source region for controlled substances being mailed throughout the United States. The proceeds from these narcotic transactions are then transported via the U.S. Mails and other communication facilities back to Southern California, the source of the controlled substances.

   e. Drug dealers prefer the U.S. Mail, (but will sometimes utilize commercial shipping companies), specifically "Express Mail" or "Priority Mail," for the narcotic or narcotic proceeds transportation for various reasons, some of which are listed below:

      1. Items sent via "Express Mail" or "Priority Mail" are considered to be first-class mail, therefore, cannot be examined without a Federal Search Warrant.

      2. "Express Mail" is usually requested to be delivered by the next day's mail.

      3. "Priority Mail" is usually requested to be delivered within two days of mailing.

2

  4. Dispatch times for "Express Mail" are specific and are controllable by the mailer/shipper.

  5. Any delay to the mail is an indication to the mailer the mail items have been possibly compromised by law enforcement agencies to obtain a search warrant.

  6. While it is not always the case that a delay of "Express Mail" or "Priority Mail" is for law enforcement purposes, those involved in illegal transactions have found that the odds are against delays in deliveries of "Express Mail" or "Priority Mail" by United States Postal Service.

  7. "Express Mail" and Priority Mail" may weigh up to 70 pounds and is desired for large volume shipments.

f. Businesses are more likely to use Express Mail and Priority Mail than First-class Mail in the course of normal business and will often use an Express Mail Corporate Account Number for the billing of the mailed articles.

g. Criminals who are involved in trafficking of controlled substances and drug proceeds will often receive multiple Express Mail articles within a short time period of each other.

h. Criminals who are involved in trafficking of controlled substances and drug proceeds will often use multiple Post Office Boxes, Commercial Receiving Agencies and addresses in foreign countries to conceal their true identities and place of residence.

i. I also know that drug orders containing currency, checks or money orders sometimes do not contain the presence of controlled substances because persons involved in shipping often utilize packing methods and sanitation procedures to conceal the odor or controlled substances.

j. I also know from talking to U.S. Postal Service Supervisors and employees responsible for handling the mail that Express Mail is insured for up to $100 in case of loss or damage. Insurance for Priority Mail may be purchased at an additional fee. Customers are discouraged from sending U.S. currency via the U.S. Mails and are

          encouraged to purchase negotiable instruments as a means to send currency by the U.S. Postal Service.

    k.    I also know through my training and experience that drug dealers will often use legitimate names and addresses of persons other than their own, or occupants at the residence, in order to receive controlled substances and/or proceeds/monetary instruments at their residence under names other than their own and to avoid suspicion.

6.    On February 15, 2008 during routine interdiction activities at the Midway Processing and Distribution Facility (P&DF) located in San Diego, CA I became suspicious of the Priority Mail parcel that is the subject of this affidavit and retrieved it for further investigation.

7.    The information in this affidavit is based upon information I have gained from my investigation, my personal observations, my training and experience as well as information related to me by other Postal Inspectors and law enforcement officers. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.

8.    I became suspicious of the parcel for the following reasons: the label was handwritten; I conducted a name inquiry on the return address and determined it was fictitious. I also conducted a name inquiry on the addressee Mark Thompson and could not associate anyone with the surname of Thompson at that location. Due to the commonality of the name Mark Thomspon and the lack of any other identifying name information for the addressee, further inquiry could not be conducted. The parcel was also suspicious because the seams of the parcel had been taped. I know from previous parcel investigations that drug traffickers will tape the seams of the parcel containing drugs in an effort to prevent the odor from emanating from within.

9.    On February 19, 2008 I met with San Diego Police Detective John McGill and his trained narcotic detection canine, Jake, at the DEA Headquarters located in San Diego, CA. Detective McGill and Jake conducted an exterior inspection of the subject parcel. When Jake examined

4

1. the parcel described above, Detective McGill advised that Jake had alerted to the presence of the odor of controlled substances. I secured the subject parcel pending an application for a search warrant. The qualifications of canine Jake are contained in attachment A.

10. Based on the facts set forth in this affidavit, I submit that there is probable cause to believe controlled substances, notes and/or currency from the illegal sale and mailing of controlled substances is being concealed in the subject parcel as described above and seek the issuance of a search warrant directing the search of the article as described above and the seizure of the article, any controlled substances, currency, and/or materials and documents reflecting the distribution of controlled substances, all in violation of Title 21, United States Code, Sections 841(a)(1), 843(b), and 846.

_____
Ana Flores
Postal Inspector

Sworn to before me, and subscribed in my presence, on this

___19th___ Day of ___February___ 2008.

_____
U. S. Magistrate Judge

## ATTACHMENT A
### For
### John T. McGill and K-9 Jake

I am currently a detective for the San Diego Police Department (SDPD) assigned to the San Diego Integrated Narcotic Task Force (NTF) and deputized as a Federal Officer with the Drug Enforcement Administration. I have been a police officer for over 22 years and have worked as a narcotic detection dog handler since 2004. I am a member of the California Narcotic Canine Association.

I have participated in over 500 arrests of persons for violations of controlled substance laws. I have in excess of 200 hours of formal training and extensive experience in controlled substances investigations, particularly involving marijuana, methamphetamine, heroin, and cocaine, including the 80 hour DEA narcotic investigator course, 40 hour California Narcotic Canine investigator course, 40 hour DEA Operation Jetway investigator course and 40 hour California Bureau of Narcotic Enforcement Clandestine Laboratory investigator course. I have testified as an expert in the field of narcotics in state court. I am familiar with the manner in which said substances are packaged, marketed and consumed. I have received formal training and field experience in the identification of all types of controlled substances, particularly those mentioned above, by sight and odor. I have worked in an undercover capacity in purchasing controlled substances.

From February 1999 to December 2003, I was assigned to an enforcement team with the San Diego Narcotic Task Force. I was involved in

over 100 cases either as the case agent or assisting detective. I have observed hundreds of persons involved in narcotic trafficking and have developed an expertise in observing certain characteristics, of which one or more are commonly evident in the majority of narcotic smuggling cases.

On January 5, 2004, I was assigned to the NTF Commercial Interdiction Team. I have been involved in over 500 parcel cases where I have utilized surveillance techniques, profiles of persons and parcels and my narcotic detection canine. I have observed several hundred parcels during the course of my duties. On selected parcels, I have observed certain characteristics that although not illegal, when taken in their totality lead me to believe the parcel contains controlled substances. These include illegible or non-existent return addresses, misspelled street names, handwritten labels, taped in an unusual manner, strong masking odors emitting from the parcel and/or cash payment.

Until recently, I have been able to confirm my suspicions by utilizing a narcotic detection canine to alert to packages. It has come to my attention during recent inspections of parcels containing controlled substances discovered during routine audits by United Parcel Service, United States Post Office and Federal Express that the smugglers are utilizing extreme measures to shield the odor of the controlled substance from the canine.

In November 2007, I was assigned to train K9 "Jake" in the area of narcotic detection. Jake and I received 40 hours of training in the detection of marijuana, heroin, methamphetamine and cocaine from SDPD narcotic canine trainer Steve Sloan and 40 hours of training from Mary Ann Bohnett. Steve

Sloan and Mary Ann Bohnett are certifying official for the California Narcotic Canine Association.

On January 31, 2008, "Jake" was certified as 100% proficient in the detection of same by California Narcotic Canine Association certifying official Steve Sloan.

Jake's alert consists of physical and mental reactions, which include a heightened emotional state, and coming to a complete "sit" when his physical position allows. Jake has completed a total of 80 hours of training. Subsequent to his certification, Jake has alerted five times and four search warrants had been obtained on his alerts. Jake alerts on several occasions where the controlled substances are seized when a warrant is not required because a warrant or consent had already been obtained.

Jake and I have been involved in training exercises where known controlled substances, containers, or paraphernalia were hidden. Because of the absorption of the odor, and the narcotics detection dog's inherently keen sense of smell, the narcotic detection dog will continue to alert on the container or item depending on the length of exposure to the controlled substance, the specific controlled substance, and ventilation of the item or container. The common belief is all currency in circulation is contaminated with narcotics. It has been my experience a properly trained narcotic detection canine will not alert to all currency. I witnessed searches of parcels by trained narcotic detection canines where no alert was given. The parcels later were discovered to contain substantial sums of U.S. Currency.

It has been my experience; the training of the canine regarding threshold amounts of narcotic odors is the most relevant factor regarding alerts on currency. It has been my experience the training must include the establishment of a lower threshold of approximately one gram of odor or more to ensure the canine is alerting to more than average contamination. Average contamination is reported to occur through normal handling. The canine must also be "proofed" from numerous odors including currency on a regular basis to maintain consistency. These have included food, plastic bags and wrap, tape, controlled substance adulterants, circulated US Currency, and other items. Proofing is a method used in training to ensure the canine alerts only to the odors for which it is trained to alert.

###